UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIAN ZHANG et al., | |
| Plaintiffs, | |
| -v- | 11 Civ. 3388 (JMF) |
| BAIDU.COM INC. and PEOPLE'S REPUBLIC OF CHINA | OPINION AND ORDER |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Mar 25, 2013

JESSE M. FURMAN, United States District Judge:

Plaintiffs, self-described "promoters of democracy in China through their writings, publications and reporting of pro-democracy events," claim in this suit that the People's Republic of China and Baidu.com Inc. ("Baidu"), a Chinese Internet search engine service,[1] have conspired to prevent their "pro-democracy political speech" from appearing in Baidu's search engine results. (Compl. ¶¶ 7-8, 10-12, 14).[2] Whatever the merits of their claims, the question presented here is whether Defendants have been properly served with the Complaint, as China declined to effect service pursuant to Article 13 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention" or "Convention"), on the ground that service "would infringe its sovereignty or security." Baidu (having entered a special appearance for the limited purpose of contesting service) moves to dismiss the Complaint pursuant to Rule 12(b)(5) of the

---

[1] Baidu purports to be "the third largest search engine service provider in the world and the largest in China, with an estimated more than 70% share of the Chinese-language market." *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 314 (S.D.N.Y. 2010) (citing Baidu's complaint).

[2] Plaintiffs did not send the Complaint to caseopenings@nysd.uscourts.gov, as required by Section 14.3 of the Southern District of New York Electronic Case Filing Rules & Instructions. They are ordered to do so by April 5, 2013, or face appropriate sanctions.

1

Federal Rules of Civil Procedure for insufficient service of process. Plaintiffs cross-move for entry of default judgment. China has not appeared in the action.

For the reasons stated below, the Court concludes that Baidu and China have not been properly served. Accordingly, Plaintiffs' motion for default judgment is denied and Baidu's motion to dismiss is granted. Nevertheless, the Court stays dismissal of the case against Baidu for thirty days to give Plaintiffs an opportunity to move for an alternative means of service. By the same date, Plaintiffs shall show cause for why the case should not be dismissed as to China.

## BACKGROUND

Plaintiffs' Complaint, filed on May 18, 2011, alleges violations of Title 42, United States Code, Sections 1981, 1983, and 1985; New York Civil Rights Law Sections 40 and 40-c; New York Executive Law Section 296(2); New York City Administrative Code Section 8-107(4)(a); and New York State Constitution Article 1, Section 11. Approximately one year after filing the Complaint, on April 25, 2012, Plaintiffs filed two USM-94 acknowledgment of service forms (Docket Nos. 2-3), which are forms provided by the United States Department of Justice to request service of documents abroad pursuant to the Hague Convention. The two forms (one for each Defendant) indicate that Plaintiffs attempted to effect service of the Complaint on Defendants through the Chinese Ministry of Justice, the designated Central Authority for China under the Hague Convention. Each form, however, is accompanied by a certificate stating that the Chinese Ministry returned Plaintiffs' request for service because "execution of the request would infringe the sovereignty or security of the People's Republic of China (Article 13)."

On the same day they filed the USM-94 forms, Plaintiffs took steps to obtain a default judgment against Defendants. Although the Clerk of this Court initially issued a "Certificate of Default," it vacated the Certificate on April 26, 2012, as "entered in error" (presumably because China had declined to effect service under the Hague Convention). (Docket No. 6). Plaintiffs

2

allege that they then attempted to serve the Summons and Complaint on Defendants by sending the documents via Federal Express. (Preziosi Affirmation ¶¶ 30-31, July 23, 2012 (Docket No. 9)). China refused to accept the package sent to its Ministry of Justice because the Ministry requires authorization in advance for deliveries, and Baidu refused to accept delivery because the package was not addressed to a specific person. (*Id.* ¶¶ 32-34) A second package containing the Summons and Complaint was successfully delivered to Baidu's Beijing offices, where a Baidu employee signed for them. (*Id.* ¶¶ 35-36). Thereafter, Plaintiffs filed a motion in this Court for entry of a default judgment. (Docket No. 7). A few months later, after entering a special appearance for the limited purpose of contesting the sufficiency of service of process (Docket Nos. 11-12), Baidu opposed Plaintiffs' motion for default judgment and moved to dismiss the Complaint for insufficient service of process (Docket Nos. 14-17). China has not appeared in the action.

## APPLICABLE LAW

When, as here, "a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298-99 (2d Cir. 2005)) (internal quotation mark omitted). Service of a summons and complaint in a federal lawsuit is governed by Rule 4 of the Federal Rules of Civil Procedure. To the extent relevant here, Rule 4(j)(1) provides that a foreign state, such as China, "must" be served in accordance with Title 28, United States Code, Section 1608. Section 1608, in turn, authorizes four ways to serve a foreign state. In pertinent part, it provides that service "shall be made upon a foreign state" (1) by "special arrangement"; (2) "in accordance with an applicable international convention," such as the Hague Convention; (3) if service cannot be made in either of these ways, by mail "to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned";

3

or (4) if service cannot thus be made within thirty days, by sending copies to the American Secretary of State to send to the foreign nation by diplomatic channels. 28 U.S.C. § 1608.

Under Rule 4(h), a foreign corporation must be served "in a judicial district of the United States . . . or at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Rule 4(f)(1), in turn, permits service outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Subject to enumerated restrictions, Rule 4(f)(2) permits alternative service "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice." Finally, Rule 4(f)(3) provides that service on a foreign litigant can be effected "by other means not prohibited by international agreement, as the court orders." As a general matter, "'[t]he only limitations on Rule 4(f)(3) are that the means of service must be directed by the court and must not be prohibited by international agreement.'" *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505 (ALC) (DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (quoting *Ehrenfeld v. Salim a bin Mahfouz*, No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005)).

As both the United States and China are signatories to the Hague Convention, that pact governs service of process by transmittal of documents abroad in this case. *See, e.g.*, *Pac. Worldwide, Inc. v. Ample Bright Dev., Ltd.*, No. 11 Civ. 107 (LTS) (HBP), 2011 WL 6224599, at *2 (S.D.N.Y. Dec. 14, 2011); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 705 (1988) (dictum) ("Compliance with the Convention is mandatory in all cases to which it applies . . . ."); Hague Convention art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or

extrajudicial document for service abroad."); Fed. R. Civ. P. 4 advisory committee's note ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."). The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to serve those documents. *See* Hague Convention arts. 2-6. In addition, Article 10 allows for service by other means, such as service "by postal channels" or through judicial officers, "[p]rovided the State of destination does not object." *Id.* art. 10; *see Burda Media, Inc.*, 417 F.3d at 300 (listing "several alternate methods of service" under the Hague Convention).

Several other provisions of the Convention are relevant here. First and foremost, under Article 13 of the Convention, a country "may refuse to comply" with a request for service "if it deems that compliance would infringe its sovereignty or security." Hague Convention art. 13. Second, Article 14 provides that "[d]ifficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels." *Id.* art. 14. Finally, to the extent relevant here, Article 15 sets forth certain conditions that must be met before a default judgment can be entered against a defendant served pursuant to the Convention. *Id.* art. 15. Among other things, that provision states that a judge may give judgment, "even if no certificate of service or delivery has been received," if the document was transmitted pursuant to the Convention, a period of time not less than six months has elapsed, and "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities." *Id.*

## DISCUSSION

Although Plaintiffs do not concede the point (*see, e.g.*, Preziosi Affirmation ¶ 2), there is plainly no merit to any suggestion that Defendants in this case were properly served under the Hague Convention, as China expressly invoked Article 13 and refused to effect service pursuant

5

to the Convention on the ground that doing so would "infringe" its "sovereignty or security." (*See* Docket Nos. 2-3). Instead of pressing that point in any serious way, Plaintiffs make various arguments for why, despite China's invocation of Article 13, service was proper or default judgment should be entered. First, they contend that China's invocation of Article 13 was "illegal and erroneous," at least as to Baidu, because Baidu is not a sovereign state. (Pls.' Reply Mem. Law ¶¶ 19-24 (Docket No. 23); Pls.' Mem. Law ¶¶ 16-18 (Docket No. 10)). Second, they argue that failure to comply strictly with the Hague Convention does not defeat effective service where, as here, Defendants have actual notice of the suit. (Pls.' Mem. Law ¶ 15; Pls.' Reply Mem. Law ¶¶ 69-91). Third, they assert that default judgment can be entered pursuant to Article 15 of the Hague Convention. (Pls.' Mem. Law ¶¶ 19-21). These arguments are unavailing.[3]

Plaintiffs' initial argument — unsupported by any legal authority — fails for two reasons. First and foremost, the Court lacks jurisdiction to address whether China properly invoked Article 13. *See, e.g.*, *Davoyan v. Republic of Turkey*, No. Civ. 10-5636 (DMG) (SSx), 2011 WL 1789983, at *2 (C.D. Cal. May 5, 2011). Indeed, "[t]he Convention is clear that '[d]ifficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.'" *Id.* (quoting Hague Convention art. 14). Second, even if the Court did have jurisdiction to entertain the argument, it would be without merit. Article 13 allows "the State addressed" to refuse to comply with a request for service "if it deems that compliance would infringe its sovereignty or security." Nothing in Article 13 limits that authority to cases brought against the state alone; instead, it allows "the State" (here, China) to

---

[3] Plaintiffs also stress Baidu's contacts with the Southern District of New York (Pls.' Mem. Law ¶¶ 29-53; Pls.' Reply Mem. Law ¶ 3), but those contacts are relevant only to the question of personal jurisdiction, which cannot be established unless and until Baidu has been properly served. *See, e.g.*, *Stormhale, Inc. v. Baidu.com, Inc.*, 675 F. Supp. 2d 373, 374 (S.D.N.Y. 2009) ("'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'") (quoting *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)).

decline to effect service pursuant to the Convention, without regard to the parties to be served. And the Convention, by its terms, applies to "*all* cases . . . where there is occasion to transmit a judicial or extrajudicial document for service abroad," whether brought against the state, a private party, or both. Hague Convention art. 1 (emphasis added).

Plaintiffs' next contention, that failure to strictly comply with the terms of the Hague Convention can be excused where a defendant has actual notice, is also without merit. In support of that contention, Plaintiffs rely principally on *Burda Media*, where the defendant challenged service pursuant to the Hague Convention on the ground that France had returned a police report regarding service on the defendant instead of the formal "certificate" required by the Convention. *See* 417 F.3d at 300-01. Noting that other cases "have held that the failure to comply strictly with the Hague Convention is *not* automatically fatal to effective service," the Second Circuit concluded that the police report was an adequate substitute for the formal certificate. *Id.* at 301. "To hold that only the exact form must be used," the Court reasoned, "would not only elevate form over substance, but would impose an unreasonably strict degree of compliance with the Hague Convention." *Id.*; *see also UNITE Nat'l Ret. Fund, Inc. v. Ariela, Inc.*, 643 F. Supp. 2d 328, 334-35 (S.D.N.Y. 2008) (relying on actual notice to overcome the objection that the Central Authority's certificate did not hew closely enough to the Hague Convention's model certificate).

This case is easily distinguished from *Burda Media* because it does not involve a technical failure to follow the procedures established by the Hague Convention. In fact, this case does not involve a "failure" of the Hague Convention at all. Instead, China invoked its rights under the Convention itself to decline to effect service on the ground that service would infringe its "sovereignty or security." To allow actual notice to serve as service in such circumstances would not advance the purposes of the Hague Convention (as doing so did in *Burda Media*); it

would affirmatively undermine the purposes of the Convention by rendering one of its provisions, Article 13, a dead letter. *See Gurung v. Malhotra*, 279 F.R.D. 215, 218 (S.D.N.Y. 2011) (noting that, while actual notice may suffice pursuant to *Burda Media* when "service through a Central Authority fails," if the receiving state's "refusal to complete service was grounded upon concerns for its sovereignty or security, as provided for in Article XIII, such a refusal would preclude service of the complaint as contrary to the terms of the Convention"); *cf. Advanced Aerofoil Techs.*, 2012 WL 299959, at *2 ("[D]istrict courts cannot circumvent the Hague Convention at whim and authorize alternative service when the foreign state has affirmatively objected to the type of service requested.").

Plaintiffs' third argument, that Article 15 of the Hague Convention allows for default judgments in these circumstances, is easily rejected. Article 15 allows for entry of a default judgment, but only if three conditions are fulfilled: (1) "the document was transmitted by one of the methods provided for in this Convention"; (2) "a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document"; and (3) "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed." Hague Convention art. 15. Here, none of these three mandatory conditions has been met, as the Complaint was not "transmitted" to Defendants at all due to China's objections under Article 13 and a "certificate" (noting China's objections) has been received. *See Burda Media*, 417 F.3d at 302 ("On its face, Art. 15 applies only where 'no certificate of any kind has been received.'" quoting Hague Convention art. 15)). Accordingly, a default judgment may not be entered under the Hague Convention.

In short, Defendants have not been served pursuant to the Hague Convention and Plaintiffs' arguments for excusing that failure are without merit. Nor is there any merit to Plaintiffs' suggestion that Defendants' receipt of the Summons and Complaint by Federal Express constitutes proper service. (Preziosi Affirmation ¶¶ 30-36). As noted above, the Hague Convention allows for service through "postal channels," but only if "the State of destination does not object." Hague Convention art. 10. And as Plaintiffs themselves concede (Pls.' Reply Mem. ¶ 62), China has objected. *See, e.g.*, *Pac. Worldwide, Inc.*, 2011 WL 6224599, at *2 ("China has objected to service by mail."); *Declarations Notifications*, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=status.comment&csid=393 &disp=resdn (last accessed Mar. 24, 2013) ("[China] oppose[s] the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention."); *see also, e.g.*, *Advanced Aerofoil Techs.*, 2012 WL 299959, at *2-3 (holding that service by international courier was not available where the receiving countries objected to service through postal channels).

For the foregoing reasons, Baidu is correct that it has not been properly served in this case. In their reply brief, however, Plaintiffs requested for the first time that the Court authorize an alternative form of service pursuant to Rule 4(f)(3), suggesting as one possibility service on Baidu's counsel. (Pls.' Consolidated Mem. Reply ¶ 25).[4] As a general matter, a party may not raise an argument for the first time in a reply brief, *see, e.g.*, *Melo v. United States*, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011), and Baidu has not been heard on the question. Moreover, it is not clear whether a court may authorize an alternative means of service pursuant to Rule 4(f)(3)

---

4   As Plaintiffs note, they did write letters to the Honorable Leonard B. Sand, to whom this case was previously assigned, "request[ing] . . . guidance" in obtaining a default judgment and fulfilling service (Letter from Stephen Preziosi (May 10, 2012)), but they neither asked for, nor received, an order allowing for service by "other means" under Rule 4(f)(3).

where, as in this case, the receiving nation has declined to effect service pursuant to Article 13 of the Hague Convention. *Compare Gurung*, 279 F.R.D. at 218 (stating that if a country refused to complete service pursuant to Article 13, "such a refusal would preclude service of the complaint as contrary to the terms of the Convention and therefore impermissible under Rule 4(f)(3)"), *and In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 437-38 (S.D.N.Y. 2009) (noting, in authorizing service pursuant to Rule 4(f)(3), that the receiving country had not invoked Article 13), *with Devi v. Rajapaska*, No. 11 Civ. 6634 (NRB), 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012) (citing *Manoharan v. Rajapaksa*, No. 11-235 (CKK) (D.D.C.)), as a case in which the Court had authorized an alternative means of service despite the invocation of Article 13), *and Bleier v. Bundesrepublik Deutschland*, No. 08 C 6254, 2011 WL 4626164, at *6 (N.D. Ill. Sept. 30, 2011) (noting that the Court had earlier authorized alternative service pursuant to Rule 4(f)(3) notwithstanding the receiving country's invocation of Article 13).

Given this uncertainty, the Court is not prepared to address the question of alternative service. At the same time, in light of the "strong preference" for deciding cases on the merits, *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005), the Court will give Plaintiffs an opportunity to be heard on whether an alternative means of service pursuant to Rule 4(f)(3) is available and appropriate. Accordingly, the Court will grant Baidu's motion to dismiss, but stay dismissal of the Complaint as to Baidu for thirty days to allow Plaintiffs to file a motion for alternative service pursuant to Rule 4(f)(3), addressing the question of whether the Court has authority to order such alternative service and, if so, what the alternative service should be in this case. By the same date, Plaintiffs shall show cause in writing why this case should not be dismissed as to China, on the ground that China has not been served in accordance with Rule 4(j)(1) and Title 28, United States Code, Section 1608.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is DENIED and Defendant Baidu's motion to dismiss the complaint is GRANTED, but dismissal is stayed for 30 days to allow Plaintiffs to file a motion for alternative service on Baidu pursuant to Rule 4(f)(3). By that same date, Plaintiffs shall show cause why this case should not be dismissed as to China for failure to serve in accordance with Rule 4(j)(1) and Section 1608.

If Plaintiffs fail to file a motion or show cause by that date, the case will be dismissed in its entirety without further notice to the parties. If Plaintiffs do file a motion, the stay will remain in effect pending the Court's decision on the motion. Defendants will then have two weeks to file any opposition to the motion, and Plaintiffs will have one week to file any reply.

Finally, no later than April 5, 2013, Plaintiffs shall e-mail the Complaint to caseopenings@nysd.uscourts.gov, as required by Section 14.3 of the Southern District of New York Electronic Case Filing Rules & Instructions. Failure to do so will result in appropriate sanctions.

**The Clerk of the Court is directed to terminate Docket Nos. 7 and 15.**

SO ORDERED.

Dated: March 25, 2013
      New York, New York

_____
JESSE M. FURMAN
United States District Judge