USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 06/07/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIAN ZHANG et al.,

Plaintiffs,

-v-

BAIDU.COM INC. and PEOPLE'S REPUBLIC OF CHINA,

Defendants.

11 Civ. 3388 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

By Opinion and Order dated March 25, 2013 (the "March Opinion"), this Court dismissed Plaintiffs' complaint for failure to serve Defendants Baidu.com Inc. ("Baidu") and the People's Republic of China in light of the fact that China had declined to effect service pursuant to Article 13 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention" or "Convention"), on the ground that such service would infringe its sovereignty or security. *See Zhang v. Baidu.com Inc.*, — F. Supp. 2d —, No. 11 Civ. 3388, 2013 WL 1195257 (S.D.N.Y. Mar. 25, 2013). The Court stayed dismissal, however, to allow Plaintiffs to file a motion for alternative service on Baidu pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. On April 25, 2013, Plaintiffs filed that motion, which raises the question — apparently never analyzed in detail before — whether alternative service is an option where, as here, a foreign country declined to effect service under Article 13 of the Hague Convention.

For the reasons stated below, the Court concludes that it is and that, in the circumstances presented here, service on Baidu's domestic counsel is an appropriate form of alternative service. Accordingly, the Court grants Plaintiffs' motion and gives Plaintiffs thirty days to serve Baidu's

counsel in this action. In addition, the Court grants Plaintiffs 120 days to serve China pursuant to Rule 4(j)(1) and Title 28, United States Code, Section 1608(a).

**BACKGROUND**

Although familiarity with this Court's prior opinion is presumed, the following facts are relevant to the present motion. Plaintiffs, self-described "promoters of democracy in China through their writings, publications and reporting of pro-democracy events," allege that China and Baidu, a Chinese Internet search engine service, have conspired to prevent their "pro-democracy political speech" from appearing in Baidu's search engine results. (Compl. ¶¶ 7-8, 10-12, 14). Plaintiffs originally tried to serve China and Baidu through the Chinese Ministry of Justice, China's designated Central Authority under the Hague Convention. The Chinese Ministry of Justice declined to effect service, however, certifying under Article 13 of the Convention that "execution of the request would infringe the sovereignty or security of the People's Republic of China." (Docket Nos. 2-3). Thereafter, Plaintiffs attempted to serve Defendants by sending the Summons and Complaint via Federal Express. (Preziosi Affirmation ¶¶ 30-31, July 23, 2012, Docket No. 9). China refused to accept the package sent to its Ministry of Justice because the Ministry requires authorization in advance for deliveries, and Baidu refused to accept delivery because the package was not addressed to a specific person. (*Id.* ¶¶ 32-34). A second package containing the Summons and Complaint was successfully delivered to Baidu's Beijing offices, where a Baidu employee signed for them. (*Id.* ¶¶ 35-36).

In the March Opinion, this Court held that Defendants had not been properly served. *See Zhang*, 2013 WL 1195257, at *3. Nevertheless, noting "the 'strong preference' for deciding cases on the merits," *id.* at *6 (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)), the Court granted Plaintiffs leave to file a motion for alternative service pursuant to Rule 4(f)(3),

addressing the question of whether a court may authorize an alternative means of service when, as in this case, the receiving nation has declined to effect service pursuant to Article 13 of the Hague Convention, *see id.* The Court noted that the answer to that question was unclear, citing two cases suggesting that if a country has refused to complete service pursuant to Article 13, service under Rule 4(f)(3) would be impermissible, *see id.* at *5 (citing *Gurung v. Malhotra*, 279 F.R.D. 215, 218 (S.D.N.Y. 2011), and *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 437-38 (S.D.N.Y. 2009)), and two cases suggesting the opposite, *see id.* (citing *Manoharan v. Rajapaksa*, No. 11-235(CKK) (D.D.C.), *noted in Devi v. Rajapaska*, No. 11 Civ. 6634 (NRB), 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012), and *Bleier v. Bundesrepublik Deutschland*, No. 08 C 6254, 2011 WL 4626164, at *6 (N.D. Ill. Sept. 30, 2011)). The Court also directed Plaintiffs to show cause in writing why the case should not be dismissed as to China, on the ground that China had not been served in accordance with Rule 4(j)(1) of the Federal Rules of Civil Procedure and Title 28, United States Code, Section 1608. *See id.* at *6.

## DISCUSSION

### A. Service on Baidu

Service on Baidu, as a foreign corporation, is governed by Rule 4(f). *See* Fed. R. Civ. P. 4(h) (stating that a foreign corporation must be served "in a judicial district of the United States . . . or at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery"). Rule 4(f)(1) permits service outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Subject to enumerated restrictions, Rule 4(f)(2) permits alternative service "if there is no internationally agreed means, or if an international agreement allows but does not specify other

means, by a method that is reasonably calculated to give notice." Finally, Rule 4(f)(3) provides that service on a foreign litigant can be effected "by other means not prohibited by international agreement, as the court orders." In this case, Rule 4(f)(3) is the only provision that remains open to Plaintiffs, as their efforts to serve Baidu pursuant to Rule 4(f)(1) failed because China invoked its rights under Article 13 of the Convention and Rule 4(f)(2) is inapplicable. In general, "[t]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012) (quoting *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)) (internal quotation marks omitted). The question here is whether the Court has that discretion where a plaintiff's inability to serve the defendant pursuant to Rule 4(f)(1) arises from the receiving country's invocation of Article 13.

The Court concludes that it does. Courts have long held that there is "no hierarchy among the subsections in Rule 4(f)," *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505 (ALC) (DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012), and that Rule 4(f)(3) "stands independently, on equal footing" with Rule 4(f)(1), *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the Ninth Circuit reasoned in *Rio Properties*:

> As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text . . . .
>
> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2) . . . . Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Id.*; *accord GLG Life Tech Corp.*, 287 F.R.D. at 265 (following *Rio Properties*); *Advanced Aerofoil Techs.*, 2012 WL 299959, at *1 (same); *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189

(PAE), 2013 WL 841037, at *2 (S.D.N.Y. Mar. 7, 2013) (similar). In other words, Rule 4(f)(3) is "merely one means among several which enables service of process on an international defendant" and "is neither a 'last resort' nor 'extraordinary relief.'" *Rio Props.*, 284 F.3d at 1015 (quoting *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D. Me. 2001)).

Applying these principles, "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) (citing cases). And although no court has addressed the precise question at issue here in any detail, it follows equally from these principles that alternative service under Rule 4(f)(3) is an option even where service pursuant to Rule 4(f)(1) fails because the receiving state invokes Article 13 of the Convention. Just as "Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means," *Rio Props.*, 284 F.3d at 1015, there are no qualifiers or limitations in Rule 4(f)(3) indicating its *un*availability when service pursuant to Rule 4(f)(1) fails or otherwise reaches a dead end. By its terms, Rule 4(f)(3) requires only that service be authorized by a court and "not prohibited by international agreement." So long as those conditions are met, it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful.[1]

[1] Before authorizing service pursuant to Rule 4(f)(3), some district courts have nevertheless required "'(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.'" *GLG Life Tech Corp.*, 287 F.R.D. at 265-66 (quoting *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012), and citing cases). To that end, "in cases involving service on a person residing in a country that is a signatory to the Hague Convention, courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under section

Baidu acknowledges that courts have authorized alternative service pursuant to Rule 4(f)(3) where service pursuant to the Hague Convention is unavailable or has failed because, as a matter of policy, the receiving country refused all requests under the Convention. (Baidu Mem. 13 (citing cases), May 8, 2013, Docket No. 32). But Baidu contends that this case is different because China "expressly exercised it [sic] right under Article 13 to decline to effect service because it 'would infringe the sovereignty or security of [China].'" (*Id.* at 7). "[O]rdering alternative service," Baidu argues, "would effectively override [China's] invocation of its own sovereignty and security." (*Id.*). Alternatively, Baidu contends, even if this Court has authority to order alternative service, it "should refrain from issuing such an order, since Article 13 would be a 'dead letter' if a United States court could simply circumvent a signatory's invocation of its sovereignty or security by ordering workaround service." (*Id.*). Citing Article 14 of the Hague Convention, which provides that "[d]ifficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels," Hague Convention art. 14, Baidu urges the Court "to recognize the exclusivity of the Hague Convention procedures and direct [Plaintiffs] to . . . diplomatic channels." (Baidu Mem. 10-11).

These arguments are ultimately unpersuasive. First and foremost, they are premised on a misunderstanding of the import of Article 13 of the Hague Convention. To the extent relevant here, that Article provides as follows:

---

4(f)(3)." *Id.* at 266 (citing *Devi*, 2012 WL 309605, at *2). Such requirements make good sense, if only "to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Id.* (quoting *Ryan v. Brunswick Corp.*, No. 02-CV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)) (internal quotation mark omitted). In this case, however, the Court need not decide whether or when these requirements apply, as Plaintiffs would fulfill them given their fruitless efforts to serve Baidu through the Hague Convention and the low probability that communication through diplomatic channels would resolve the problem.

> Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems *that compliance would infringe its sovereignty or security*.
>
> It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.

Hague Convention art. 13 (emphasis added). By invoking Article 13, therefore, a receiving state merely declares that "compliance" with a "request for service" pursuant to the Convention "would infringe its sovereignty or security." It is not a declaration that the lawsuit itself violates its sovereignty or security. It follows that authorizing service within the United States pursuant to Rule 4(f)(3) in a manner that does not call upon China to effect service does not override its invocation of its own sovereignty and security; to the contrary, it honors that invocation.

More generally, Baidu's assertion that Article 13 refusal precludes alternative service assumes that the Hague Convention is the exclusive means of service on a foreign defendant, rather than a set of procedures, exclusive or not, for serving a defendant by transmitting judicial documents abroad. The purpose of the Hague Convention is "'to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.'" *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) (quoting Hague Convention pmbl.); *see also* Hague Convention art. 1 (stating that the Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad"). As the Supreme Court has explained, "[t]he *only* transmittal to which the Convention applies is a transmittal abroad that is *required* as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (emphasis added). The Convention has "no further implications," therefore, "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause." *Id.*; *see also GLG Life Tech Corp.*, 287 F.R.D. at 267 ("[S]ervice on

GLG's counsel . . . would not run afoul of the Hague Convention since . . . no documents would be transmitted abroad."); *RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512 (DLC), 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) (holding that the plaintiff's request for court-directed service on the defendant through counsel in the United States pursuant to Rule 4(f)(3) did not implicate the Convention because it involved no transmittal of documents abroad).

The conclusion that a court may order alternative service pursuant to Rule 4(f)(3) notwithstanding a state's invocation of Article 13 finds some support in *Manoharan* and *Bleier*, which were cited in the March Opinion — although, as Baidu correctly notes, that support is only limited because neither decision addressed the issue in detail. (Baidu Mem. 9-11). On the flip side, neither *Gurung* nor *South African Apartheid Litigation* — the cases cited in the March Opinion for the opposite proposition and upon which Baidu relies here (*id.* at 8-9) — calls for a different result. To be sure, the *Gurung* Court did state that "[i]f the [Government of India's] refusal to complete service was grounded upon concerns for its sovereignty or security, as provided for in Article XIII, such a refusal would preclude service of the complaint as contrary to the terms of the Convention and therefore impermissible under Rule 4(f)(3)." 279 F.R.D. at 218. But that statement was in dictum, and the Court cited no authority to support it. Further, in addition to flying in the face of the principles discussed above, it is not consistent with the plain language of Rule 4(f)(3) itself, which prohibits a form of service only if the "*means*" are "prohibited by international agreement." Fed R. Civ. P. 4(f)(3) (emphasis added). A refusal to effect service under Article 13 of the Convention does not indicate that other "means" are "prohibited" — it indicates only that service through the Central Authority is not an option.

*South African Apartheid Litigation* is even less persuasive authority for Baidu's position. In that case, the Court *granted* the plaintiffs' request for an order authorizing service on a foreign

defendant through his counsel in the United States pursuant to Rule 4(f)(3).  The Court did so because the defendant had taken steps in Germany "to thwart plaintiffs' good faith efforts to serve it with a summons and complaint," and six years had elapsed since transmission of the documents to the Central Authority under the Hague Convention.  643 F. Supp. 2d at 437.  In doing so, the Court merely noted that the German courts had not "reached a determination that the Central Authority is permitted to decline to complete service in light of sovereignty or security concerns pursuant to Article Thirteen of the Hague Convention," *id.*, and that, had German courts done so, "comity considerations" would have been "stronger," *id.* at 438.  Implicitly, therefore, the Court concluded that invocation of Article 13 did not bar alternative service pursuant to Rule 4(f)(3).  Significantly, the Court also observed that "[c]omity dictates that this Court cannot order the German Court to assist this litigation by transmitting judicial documents, but it does not shield German defendants entirely."  *Id.* at 438.

Finally, relying on the Supreme Court's recent decision in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), Baidu argues that this Court "should not stretch to find alternative means of service to hear a political dispute with a foreign nation's alleged domestic policies which this Court lacks subject matter jurisdiction to adjudicate in the first place."  (Baidu Mem. 15).  This argument, however, borders on frivolous.  In *Kiobel*, the Supreme Court held that the Alien Tort Statute (the "ATS") does not grant federal courts jurisdiction over claims relating to conduct occurring outside the United States.  *See* 133 S. Ct. at 1669.  But its decision was premised on the fact that the ATS "is 'strictly jurisdictional,'" and "does not directly regulate conduct or afford relief."  *Id.* at 1644 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004)).  Indeed, the Court expressly reaffirmed that for statutes that *do* regulate conduct or afford relief — as the statutes upon which Plaintiffs rely in this case do, *see Zhang*, 2013 WL

1195257, at *1 (listing the statutory bases for Plaintiffs' claims) — the "question of extraterritorial application" is "a 'merits question,' not a question of jurisdiction," *Kiobel*, 133 S. Ct. at 1644 (citing *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2876-77 (2010)); *see also Morrison*, 130 S. Ct. at 2877 ("[T]o ask what conduct [a statute] reaches is to ask what conduct [that statute] prohibits, which is a merits question. Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case." (internal quotation marks omitted)). In light of that, Baidu's argument about extraterritoriality goes to the merits, not this Court's jurisdiction, and is premature. Further, and in any event, Plaintiffs' claims are not premised entirely on conduct abroad, as the Complaint alleges that Baidu "proactively censors its content here in the United States." (Compl. ¶ 14).

For the foregoing reasons, the Court concludes that it has discretion to authorize alternative service on Baidu pursuant to Rule 4(f)(3) notwithstanding China's refusal to effect service under the Hague Convention on the ground that doing so would infringe its sovereignty and security. The only remaining question is what method of alternative service would be appropriate. A method of alternate service is acceptable if it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Anticevic*, 2009 WL 361739, at *3 (citation omitted). For a method of service to satisfy due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Luessenhop v. Clinton County, New York*, 466 F.3d 259, 269 (2d Cir. 2006) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A district court is "afforded wide discretion in ordering service of process under Rule 4(f)(3)." *Anticevic*, 2009 WL 361739, at *3 (internal quotation marks omitted).

In the present case, Plaintiffs propose four methods of alternative service: (1) service on Baidu's New York counsel, (2) publication in China, (3) e-mail, or (4) fax. (Preziosi Affirmation ¶¶ 37-43, Apr. 26, 2013, Docket No. 31). Mindful that the Court "need only select one reliable mechanism," *South African Apartheid Litigation*, 643 F. Supp. 2d at 437, and that "'[n]o one form of substitute service is favored over any other,'" *RSM Prod. Corp.*, 2007 WL 2295907, at *4 (quoting *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176 (2d Cir. 1979)), the Court orders that Plaintiffs may serve Baidu's counsel in New York. Such service "is a common form of service ordered under Rule 4(f)(3)." *Richmond Techs.*, 2011 WL 2607158, at *13; *see also GLG Life Tech Corp.*, 287 F.R.D. at 267 (citing cases). Further, "[n]othing in the Hague Convention prohibits such service." *Richmond Techs.*, 2011 WL 2607158, at *13. Indeed, because service on counsel occurs domestically, and does not involve transmission of documents abroad, it does not even "implicat[e]" the Hague Convention. *Volkswagenwerk*, 486 U.S. at 707 ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications."); *accord GLG Life Tech Corp.*, 287 F.R.D. at 267; *RSM Prod. Corp.*, 2007 WL 2295907, at *3.[2]

Additionally, service on Baidu's counsel would satisfy the requirements of due process, as Baidu has actual notice of this lawsuit and there is evidence of "adequate communication" between Baidu and counsel in any event. *GLG Life Tech Corp.*, 287 F.R.D. at 267 (quoting *Volkswagenwerk*, 486 U.S. at 705); *see also Richmond Techs.*, 2011 WL 2607158, at *13. Baidu's counsel has been representing it continuously in this action for roughly nine months. Further, as Baidu concedes, Carey Richard Ramos, its current counsel, represented the company

[2] By contrast, there is an argument that service by e-mail, fax, or publication, all of which would occur in China, would run afoul of the Hague Convention and thus be prohibited. *See, e.g.*, *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *1-2 (N.D. Cal. May 13, 2008). The Court need not address that issue given that service on counsel is appropriate.

previously (Baidu Mem. 12 n.23 (referencing *Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 313 (S.D.N.Y. 2010)), albeit while working for a different law firm. Given Baidu's self-proclaimed status as "the third largest search engine service provider in the world and the largest in China, with an estimated more than 70% share of the Chinese-language market," *Register.com*, 760 F. Supp. 2d at 314 (citing Baidu's complaint), this case is a far cry from one in which "former counsel deny any knowledge of [the defendant's] present whereabouts, and further refute any contact with him since their representation concluded." *In re Heckmann Corp. Sec. Litig.*, C.A. No. 10-378-LPS-MPT, 2011 WL 5855333, at *4 (D. Del. Nov. 22, 2011).

Notably, Baidu does not suggest otherwise. Instead, it argues that authorizing service on counsel would be unfair because counsel made only a special appearance in this case to contest service of process. (Baidu Mem. 12). A nearly identical argument was made in *RSM Production Corp.* Judge Cote concluded that it was "unnecessary to grapple" with the argument, however, as counsel's relationship with the defendant was "well established and extend[ed] beyond any limited appearance in this lawsuit." *RSM Prod. Corp.*, 2007 WL 2295907, at *6. That is true in this case as well, given Baidu's prior relationship with Ramos and the long history of this litigation. Put simply, here, as in *RSM Production Corp.*, "[c]ourt-directed service on [Baidu] through [its New York counsel] does not contravene any federal judicial policy and [Baidu] has been unable to point to any authority suggesting that it does." *Id.* Accordingly, pursuant to Rule 4(f)(3), Plaintiffs are authorized to serve the Summons and Complaint on Baidu's New York counsel. Any such service must be made within thirty days of this order.

**B. Service on China**

Plaintiffs wisely do not seek authorization for alternative service on China, as Rule 4(f)(3) does not apply to service on a foreign state. *See* Fed. R. Civ. P. 4(j)(1) (providing that a

foreign state "must" be served in accordance with Title 28, United States Code, Section 1608); 28 U.S.C. § 1608(a) (authorizing four ways to serve a foreign state). *See generally Zhang*, 2013 WL 1195257, at *2. Instead, they ask the Court to extend their time to serve China through "'diplomatic channels,' as provided in Article 14 of the Hague Convention and 28 U.S.C. § 1608(4)." (Preziosi Affirmation ¶¶ 44, 46-48, Docket No. 31). In light of Plaintiffs' reasonably diligent efforts to serve China (followed by its litigation in this Court with respect to whether such service was proper), the Court will grant the request. Nevertheless, "[b]ecause district courts need to be able to control their dockets, . . . the amount of time allowed for foreign service is not unlimited." *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005). Accordingly, Plaintiffs are granted leave to serve China no later than 120 days from this order. If Plaintiffs fail to serve China by that date, they shall show cause in writing why this case should not be dismissed as to China. Failure to show such cause in the event that China has not been properly served will result in dismissal of the complaint as to China.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for alternate service on Baidu is GRANTED and Plaintiffs are ordered to serve Baidu's New York counsel with the Summons and Complaint in English and Chinese within thirty days of this order. Plaintiffs are granted 120 days within which to serve China pursuant to Rule 4(j)(1) and Section 1608.

The Clerk of Court is directed to close Docket Number 29.

SO ORDERED.

Dated: June 7, 2013
New York, New York

JESSE M. FURMAN
United States District Judge