UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIAN ZHANG, GUANG YANG, WA XUE, TIAN CHENG WANG, LIQUN CHEN, SHENQI FU, SHUYUAN SONG, YUHONG ZHANG,<br><br>     Plaintiffs,<br><br>  v.<br><br>BAIDU.COM INC., PEOPLE'S REPUBLIC OF CHINA,<br><br>     Defendants. | 1:11-cv-03388 (JMF) |

**DEFENDANT BAIDU, INC.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Carey R. Ramos
Jacob J. Waldman
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    A.    All of Plaintiffs' Purported Causes of Action Would Require the Court to Violate the First Amendment by Sanctioning Baidu for Declining to Speak ..........3

    B.    Plaintiffs' Claims are Based on Statutes That Do Not Have Extraterritorial Reach, and Plaintiffs Have Failed to Plead Conduct Occurring in the United States or Otherwise Justifying Extraterritorial Application ........................6

    C.    Plaintiffs' Federal Claims Are Legally Deficient and Should Be Dismissed ..........7

        1.    Plaintiffs Fail to Allege the Elements Necessary to Plead a Claim Under 42 U.S.C. § 1985 ................................................................................7

        2.    Plaintiffs Fail to Allege the Elements Necessary to Plead a Claim Under 42 U.S.C. § 1983 ..............................................................................10

        3.    Plaintiffs Fail to Allege the Elements Necessary to Plead a Claim Under 42 U.S.C. § 1981 ..............................................................................11

    D.    Plaintiffs Offer No Further Support for Their Deficient State and Local Causes of Action, Which Accordingly Should Be Dismissed ...............................11

        1.    Plaintiffs' Claims Under NYSCRL §§ 40 and 40-c Should Be Dismissed for Failure to Provide Timely Notice of Their Claims to the New York State Attorney General .........................................................11

        2.    Plaintiffs Still Offer No Legal Authority or Facts to Support the Assertion that a Search Engine is a "Place of Public Accommodation" .........................................................................................12

        3.    Plaintiffs Concede They Do Not Have Authority to Support Their Claim That the "Democracy Movement in China" is a Creed ...................13

    E.    Having Foregone at Least Two Opportunities to Timely Amend Their Complaint Under This Court's Individual Practices, Plaintiffs Are Now Barred From Amending; and Any Such Amendment Would be Futile .................14

CONCLUSION ..............................................................................................................................15

## TABLE OF AUTHORITIES

**Page**

### Cases

*Agency for Int'l Dev. v. Alliance for Open Soc. Int'l,*
   133 S.Ct. 2321 (2013) ................................................................................................... 3

*Am. Atheists, Inc. v. Port Auth. of N.Y. and N.J.,*
   11 Civ. 6026 (DAB), 2013 U.S. Dist. LEXIS 45496 (S.D.N.Y. Mar. 28, 2013) ..................... 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................... 7, 10, 11, 14

*Batavia Lodge No. 196, Loyal Order of Moose v. N.Y. State Div. of Human Rights,*
   43 A.D. 2d 807 (4th Dep't 1973) ................................................................................... 12

*Bray v. Alexandria Women's Health Clinic,*
   506 U.S. 263 (1993) ..................................................................................................... 10

*Cahill v. Rosa,*
   89 N.Y.2d 14 (1996) ..................................................................................................... 12

*D'Amico v. Commodities Exch., Inc.,*
   235 A.D.2d 313 (1st Dep't 1997) ................................................................................. 12

*Dura Pharmaceuticals, Inc. v. Broudo,*
   544 U.S. 336 (2005) ..................................................................................................... 14

*Eisert v. Town of Hempstead,*
   918 F. Supp. 601 (1996) ............................................................................................... 13

*Gleason v. McBride,*
   869 F.2d 688 (2d Cir. 1989) ....................................................................................... 9, 10

*Hennessy v. City of Long Beach,*
   258 F. Supp. 2d 200 (E.D.N.Y. 2003) ........................................................................... 13

*Johnson v. Rowley,*
   569 F.3d 40 (2d Cir. 2009) ............................................................................................. 7

*Keating v. Carey,*
   706 F.2d 377 (2d Cir. 1983) ........................................................................................... 9

*Kiobel v. Royal Dutch Petroleum Co.,*
   133 S. Ct. 1659 (2013) ............................................................................................... 6, 7

*Morrison v. National Australia Bank Ltd.,*
   130 S. Ct. 2869 (2010) ................................................................................................... 7

*New York Roadrunners Club v. State Div. of Human Rights*,
    81 A.D.2d 519 (1st Dep't 1981) ............................................................................................12

*Noah v. AOL Time Warner Inc.*,
    261 F. Supp. 2d 532 (E.D. Va. 2003) ................................................................................12, 13

*Reed v. Pfizer, Inc.*,
    839 F. Supp. 2d 571 (E.D.N.Y. 2012) ....................................................................................14

*Rodgers v. Tolson*,
    582 F.2d 315 (4th Cir. 1978) ..................................................................................................10

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
    547 U. S. 47 (2006) ...................................................................................................................3

*Shelley v. Kraemer*,
    334 U.S. 1 (1948) ......................................................................................................................5

*Smith v. O'Connor*,
    901 F. Supp. 644 (S.D.N.Y. 1995) .........................................................................................15

*Sturdza v. United Arab Emirates*,
    281 F.3d 1287 (D.C. Cir. 2002) ...........................................................................................7, 8

*TechnoMarine S.A. v. Giftports, Inc.*,
    No. 11 Civ. 9643(DAB), 2012 WL 3964734 (S.D.N.Y. Sept. 10, 2012) ..............................15

*In re U.S. Power Squadrons v. State Human Rights Appeal Bd.*,
    59 N.Y.2d 401 (1983) ............................................................................................................12

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*,
    425 U.S. 748 (1976) .................................................................................................................4

*Weinstock v. Ladisky*,
    197 Misc. 859 (Sup. Ct. N.Y. Cnty. 1950) ............................................................................13

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................................................12

**Statutes**

42 U.S.C. § 1981 ................................................................................................................... 2, 11

42 U.S.C. § 1983 ................................................................................................................... 2, 10

42 U.S.C. § 1985 ................................................................................................................ 2, 7, 8

N.Y. Civ. Rights Law ("NYSCRL") § 40 ......................................................................... 2, 5, 11

N.Y. Civ. Rights Law § 40-c ................................................................................................. 2, 11

**PRELIMINARY STATEMENT**

Plaintiffs' grab bag of claims have one thing in common—they each ask this Court to violate the First Amendment by compelling Baidu.com to display or provide access to Plaintiffs' political works and viewpoints. The Court need not look past this pervasive constitutional infirmity in Plaintiffs' complaint and should dismiss the entire action on this basis alone.

Plaintiffs' Opposition (the "Opposition") completely misses the point. It attempts to evade clear Supreme Court authority declaring compelled speech unconstitutional by asserting that Baidu.com is a business engaging in "commercial speech" and therefore somehow outside the protections of the First Amendment. This argument turns decades of First Amendment law on its head—in choosing to engage in commerce, one does not forfeit constitutional rights or consent to publish others' political speech. Plaintiffs also contend that a civil lawsuit seeking to compel speech does not involve the requisite state action to violate the First Amendment. Again, Plaintiffs miss the point that the courts are a co-equal branch to the executive and legislative branches, and therefore equally subject to the limitations of the First Amendment.

Baidu also demonstrated in its Moving Brief ("Moving Brief" or "Mov. Br.") that none of the statutes alleged in the Complaint has extraterritorial reach, and that Plaintiffs nowhere allege any domestic conduct. In response, Plaintiffs assert that the conduct is that Baidu has somehow violated their "civil rights," but that is a legal conclusion that cannot substitute for facts. Plaintiffs never explain how the alleged failure of a search engine located in the People's Republic of China (the "PRC") to answer search queries by displaying or linking to certain political works available in the United States involves conduct in the United States either by Baidu—a Cayman Islands company with its principal executive offices located in Beijing, PRC—or its Chinese affiliate Baidu Netcom, which owns and operates Baidu.com in the PRC (and is not a party to this lawsuit). Accordingly, Plaintiffs still fail to overcome the strong

1

presumption against extraterritoriality of federal or state laws, and each of their claims can be dismissed for this reason as well.

Baidu's Moving Brief also demonstrated that Plaintiffs failed to allege the necessary elements of each of their purported federal statutory claims. Plaintiffs have not remedied these failings either—they still insist that the PRC can be a co-conspirator under 42 U.S.C. § 1985 and that the alleged conspiracy occurred in the United States. Plaintiffs now also maintain that they are a protected class through the puzzling assertion that, by operating a search engine in Chinese, Baidu.com has acted with racial animus and "targeted" Plaintiffs—a charge that is frivolous on its face. For the same reason, Plaintiffs still fail to allege racial discrimination as required to state a claim under 42 U.S.C. § 1981. And Plaintiffs still fail to explain how allegedly acting pursuant to the law of the PRC constitutes acting under color of the laws of one of the 50 states of the United States or the District of Columbia, as required to state a claim under 42 U.S.C. § 1983.

Baidu likewise demonstrated the infirmities of Plaintiffs' purported state claims, and Plaintiffs have failed to remedy them. They still offer no authority that the statutes at issue consider a search engine to be a place of public accommodation—or even a "place" at all. And they even *concede* that they have found no conclusive authority that supports the claim that a general belief in democracy constitutes a "creed." Since each state claim Plaintiffs seek to plead relies on demonstrating discrimination based on "creed," each of those purported claims fails and should be dismissed. And Plaintiffs apparently still have not attempted to notify the New York Attorney General ("NYAG") of their purported claims under sections 40 and 40-c of the NYSCRL—although their failure to do so at the commencement of this action over two years

ago cannot now be cured—and hence their purported claims under those sections should be dismissed for this reason as well.

Finally, Plaintiffs should not be permitted to amend their Complaint as they now belatedly request.  Pursuant to this Court's Individual Rules and Practices in Civil Cases ("Individual Practices"), they have had two opportunities to amend—(1) after receiving Baidu's pre-motion letter pursuant to section 3.B.i of the Individual Practices ("Pre-Motion Letter") and (2) within 21 days after service of Baidu's Answer on August 5, 2013 (*i.e.* by August 26, 2013)—but failed to do so.  Regardless, Plaintiffs do not specify the facts they would add or how any amendment would alleviate the legal infirmities that are fatal to each of their purported claims,[1] and thus amendment would be futile.

## ARGUMENT

A.  **All of Plaintiffs' Purported Causes of Action Would Require the Court to Violate the First Amendment by Sanctioning Baidu for Declining to Speak**

Baidu's Moving Brief invoked the fundamental First Amendment principle, declared in numerous decisions of the United States Supreme Court, that the government may not compel persons to speak or penalize them for declining to do so.  Mov. Br. at 5–6; *see, e.g., Agency for Int'l Dev. v. Alliance for Open Soc. Int'l*, 133 S.Ct. 2321, 2327 (2013) (it is a "basic First Amendment principle that 'freedom of speech prohibits the government from telling people what they must say.'") (quoting *Rumsfeld* v. *Forum for Academic and Institutional Rights, Inc.*, 547 U. S. 47, 61 (2006)).  Each of Plaintiffs' purported claims would require this Court to violate the First Amendment by compelling Baidu.com to display or provide access to Plaintiffs' political

---

[1] The Opposition asserts multiple times that Baidu admits, or appears to admit, certain allegations.  *See, e.g.*, Opp. ¶¶ 2, 16.  Baidu set forth in its Answer (Dkt. # 45) precisely which allegations, or portions of allegations, it admitted, and which it denied or effectively denied, and any characterization of Baidu's response to such allegations that differs from the Answer is incorrect.

works—or penalizing Baidu for declining to do so—and the Court should therefore dismiss this action in its entirety.

Plaintiffs' Opposition miscomprehends this irrefutable principle, which is fatal to their misguided case. The Opposition first asserts that this Court may compel Baidu.com to display or provide access to their political works because Baidu.com allegedly engages in "commercial speech" with a "profit motive" by displaying advertising. Opp. ¶¶ 9–11. But Plaintiffs do not—and cannot—cite authority that a commercial enterprise forfeits its First Amendment rights by engaging in commerce or displaying advertisements.

Clearly, Plaintiffs could not sue a commercial billboard operator for refusing to display their political writings on its billboards—or seek damages from the *The New York Times* for declining to publish their views on its editorial pages on the grounds that the *Times* also carries advertising.[2] Plaintiffs' own authority, *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976), holds that even when "the advertiser's interest is a purely economic one . . . [that] hardly disqualifies him from protection under the First Amendment." *Id.* at 762.

Plaintiffs' misinterpretation of the NYSCRL and NYSHRL exemplifies their fundamental misapprehension of the First Amendment's prohibition of compelled speech. Plaintiffs assert that these anti-discrimination statutes protect their right to "publish, circulate,

---

[2] Reversing course, Plaintiffs attempt to distinguish Baidu.com from newspapers on the ground that "newspapers are private, subscription based business; not a publically available search engine . . . [that] collects and provides material and information upon request without exacting a fee or requiring membership." Opp. ¶ 12 (seeking to distinguish *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974)). This is an illusory distinction. Many newspapers, including the *Miami Herald*, make their content publicly available on websites without charging a fee or requiring membership. *See, e.g.*, http://www.miamiherald.com/; http://www.latimes.com/; http://www.washingtonpost.com/; http://www.villagevoice.com/. Plaintiffs have no more right to compel these newspapers to publish their writings than they have the right to compel Baidu.com to do so.

issue, display, post or mail any written or printed communications, notice or advertisement in any place of public accommodation, so as to maintain that everyone feels welcome, accepted, and desired." Opp. ¶ 35.  In fact, the First Amendment prohibits this kind of coercion, and does not authorize the government to punish those who do not cooperate.  Plaintiffs' interpretation would recognize a cause of action to compel a restaurant, hotel, store, hospital, bowling alley, kindergarten, or any of the other myriad establishments enumerated in NYSCRL § 40 to display or publish any writing, communication or idea—no matter the content, relevance, or appropriateness—if it makes a prospective litigant "feel[] welcome, accepted, and desired."  On Plaintiffs' theory, neo-Nazis could sue kosher restaurants for damages for declining to display swastikas.  That is not the law.  Unsurprisingly, Plaintiffs cite no authority for this proposition or the equally bizarre assertion that everyone has the right to compel "places of public accommodation" to post messages that make them feel "desired."

Plaintiffs also purport to distinguish decades of Supreme Court precedent prohibiting the government from compelling speech by claiming their suit is not government regulation, but "a private lawsuit."  Opp. ¶ 12.  This assertion again misses the point—the courts are a co-equal branch of the federal government, and no branch of the government may act contrary to the Constitution.  *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948) ("That the action of state courts and judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court.").

Plaintiffs also claim that Baidu is "not speaking" or that its speech "is false and misleading commercial speech without expressive content."  Opp. ¶ 10.  But Plaintiffs nowhere explain—much less plead—how Baidu.com's alleged failure to link to Plaintiffs' works is

5

misleading or who has been misled, and provides neither authority nor analysis that a search engine such as Baidu.com does not engage in expression.  Indeed, Plaintiffs' entire lawsuit is based on the premise that Baidu.com selects the content it will display—which contradicts the assertion that Baidu does not engage in expression.

Plaintiffs simply cannot ask this Court to ignore the First Amendment and decades of Supreme Court precedent to allow Plaintiffs to pursue claims to compel speech or penalize the failure to speak.

**B.    Plaintiffs' Claims are Based on Statutes That Do Not Have Extraterritorial Reach, and Plaintiffs Have Failed to Plead Conduct Occurring in the United States or Otherwise Justifying Extraterritorial Application**

Baidu demonstrated in its Moving Brief that Plaintiffs' claims are based on statutes that do not have extraterritorial reach and that Plaintiffs failed to plead conduct occurring in the United States or otherwise justifying extraterritorial application.

Plaintiffs' sole attempt to plead such an allegation makes only the ambiguous and conclusory assertion that Baidu "proactively censors its content here in the United States," Compl. ¶ 14.  As we explained in our Moving Brief, this allegation—in addition to being conclusory—is ambiguous as to whether the phrase "here in the United States" refers to the situs of the "content" or the alleged "proactive[] censor[ing]."  Mov. Br. at 6.  Our Pre-Motion Letter therefore requested a more definite statement with respect to this allegation, but Plaintiffs failed to provide one.  Mov. Br. at 4 n.6.

We again noted this ambiguity—and the conclusory and legally insufficient nature of the allegation—in our Moving Brief, *id*. at 4 n.6 & 6, but Plaintiffs ignored this entirely in their Opposition.  This Court may therefore fairly draw the inference that Plaintiffs can plead no facts to support this conclusory allegation, which is insufficient "to displace the presumption against extraterritorial application," *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013)

(citing *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2883–88 (2010)).  *See Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009) ("To survive a Rule 12(c) motion, [plaintiffs'] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal citation and quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiffs assert that Baidu's conduct is "causing a real, substantial, and direct impact in the United States and New York" because Baidu's actions are "circumventing our laws, usurping our constitutional protections, and curtailing individual rights to speech and expression." Opp. ¶ 16.  But these are legal conclusions, not facts.  The only purported "direct impact" Plaintiffs claim is that they cannot find their own political works on Baidu.com—which has purportedly caused them some unspecified "harm."  But whatever disappointment, anger or other subjective reaction Plaintiffs may claim to experience as a result does not "touch and concern *the territory of the United States*," much less do so with "*sufficient force to displace the presumption against extraterritorial application*."  *Kiobel*, *supra* (emphasis added).

Plaintiffs' claims do nothing more than ask this Court, in the absence of clear statutory authority, to apply U.S. laws to "conduct occurring in the territory of another sovereign"— precisely the sort of extraterritorial application of U.S. law that the Supreme Court sought to curb in *Kiobel*.

C.    **Plaintiffs' Federal Claims Are Legally Deficient and Should Be Dismissed**

    1.    **Plaintiffs Fail to Allege the Elements Necessary to Plead a Claim Under 42 U.S.C. § 1985**

Baidu's Moving Brief demonstrated that Plaintiffs have failed to plead the elements of a section 1985(3) cause of action.  They fail to allege a conspiracy between two "persons," since a foreign government is not a "person" under section 1985(3), Mov. Br. at 8–9, *Sturdza v. United*

7

*Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002), and because Baidu's alleged function as the PRC's "agent" precludes Baidu as a matter of law from conspiring with the PRC. Mov. Br. at 9, n.8. Baidu further showed that no part of the purported conspiracy took place in the United States, Mov. Br. at 9, and that Plaintiffs failed to allege they are members of a class that section 1985(3) is designed to protect, but rather a small number of individuals whose affiliation, organization, or other common links, if any, apart from advocating for democracy in the PRC, are unpleaded. Mov. Br. at 9–10.

Plaintiffs' Opposition nonetheless concludes that the PRC is a "person" under section 1985(3) because the PRC is engaging in "private, commercial activity," and the Foreign Sovereign Immunities Act ("FSIA") therefore would not protect the PRC from suit. Opp. ¶ 23. Plaintiffs offer no authority that section 1985(3) includes a "commercial activity" exception or that the FSIA is relevant. But even if such an exception existed, Plaintiffs have not pleaded what activity the PRC has undertaken in connection with Baidu apart from enacting laws—a distinctly sovereign function. Notably, *Sturdza*'s finding that a foreign government is not a "person" under section 1985 is based not upon "Eleventh Amendment concerns," Opp. ¶ 23, but analysis of other relevant statutes and Congressional intent. *Id.* at 1307 ("Sturdza points to neither legislative history nor any other evidence suggesting that Congress intended section 1985 to cover foreign governments.").[3]

Having failed to plead facts suggesting that Plaintiffs are members of a *racial* minority— which, in the PRC, they plainly are not—or that they form any other cohesive class, Plaintiffs

---

[3] Plaintiffs now assert that the "[p]reviously unknown information" that Baidu Netcom owns and operates www.baidu.com "raises an inference that Baidu Netcom is a co-conspirator." Opp. ¶ 24. Plaintiffs do not assert, however, who it is that forms the rest of the conspiracy. The PRC, as noted above, is not a "person" under section 1985(3), and the Complaint alleges no facts concerning Baidu, Inc.'s role in any purported "conspiracy."

8

rely instead on the unpleaded and highly implausible (if not ludicrous) proposition that Baidu.com, by operating a search engine that allows Chinese readers to search the Internet in their native language, is actually "targeting" seven "people of Chinese origin" who live in Queens and Long Island, and that all of this "infers [sic] that defendants have a discriminatory animus behind their actions." Opp. ¶¶ 22, 28, 32. But Baidu.com no more "targets" the Plaintiffs by allegedly declining to link to their political writings than does the *London Times* by refusing to print an editorial from a British expat living in New York.

Furthermore, Plaintiffs' fanciful claim is contradicted by their own Complaint, which alleges that the Baidu search engine blocks "any information in whatever format if its content deals with the democracy movement in China" or certain other democracy-oriented topics, Compl. ¶ 22, and that "[e]ach of these words, phrases, articles and publication *of any kind* are systematically blocked" by the search engine. Compl. ¶ 23 (emphasis added). Plaintiffs therefore allege that Baidu's search engine filters *content*, which is contrary to their current assertion that it somehow personally targets Plaintiffs.

Finally, Plaintiffs continue to insist that their shared belief in "democracy" (or more precisely the cause of "democracy in China")—which term is itself an umbrella for numerous governmental structures, institutions, rights, and norms—creates a protected class, despite their failure to allege any other common membership, affiliation, or organization. In support, Plaintiffs cite *Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983), for the proposition that political parties—which Plaintiffs nowhere allege they constitute—are a protected class under section 1985. But, as Baidu explained in its Pre-Motion Letter, the Second Circuit has since found, in *Gleason v. McBride*, 869 F.2d 688 (2d Cir. 1989), that a plaintiff's allegation that "he was discriminated against because he was a political opponent of the defendants" was insufficient to

9

state a claim under section 1985(3), since, "'those who are in political and philosophical opposition to [the defendants], and who are, in addition, outspoken in their criticism of the [defendants'] political and governmental attitudes and activities' do not constitute a cognizable class under section 1985." *Id.* at 695 (quoting *Rodgers v. Tolson*, 582 F.2d 315, 317 (4th Cir. 1978)). Plaintiffs likewise ignore the Supreme Court's holding in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)—which long postdates all of Plaintiffs' purported authority—that "[w]hatever may be the precise meaning of a class . . . the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Id.* at 269.

### 2. Plaintiffs Fail to Allege the Elements Necessary to Plead a Claim Under 42 U.S.C. § 1983

Baidu's Moving Brief noted succinctly that 42 U.S.C. § 1983 prohibits deprivation of rights by a person acting under "color of any statute" of a state or territory of the United States, or of the District of Columbia. Mov. Br. at 11. Plaintiffs' argument that the PRC can satisfy the "state actor" requirement willfully ignores the point that "state" under section 1983 refers to one of the 50 states in the United States—"state . . . of the United States"—not to the general term sometimes used to describe a sovereign country.

Plaintiffs' attempt to characterize the operation of a Chinese-language search engine as an act of racial hostility toward Chinese people fails for the same reasons described in section C.1 above. Furthermore, Plaintiffs are in no respect entitled to conduct discovery to "flush-out" Baidu's "motives and discriminatory intent." Opp. ¶ 28. Plaintiffs cannot make unpleaded, conclusory, and highly implausible assertions of racial bias, without a scrap of alleged fact, and then conduct discovery to see if they can find the basis for such a claim. *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

### 3. Plaintiffs Fail to Allege the Elements Necessary to Plead a Claim Under 42 U.S.C. § 1981

Baidu's Moving Brief made clear that, to plead a claim under section 1981, Plaintiffs must allege not only that they are members of a racial minority, but that the defendant discriminated against them on that basis. Mov. Br. at 10–11. The Complaint alleges neither of these elements. *Id.* Notably, Plaintiffs themselves admit the applicability of the second element by asserting that "[c]laims that attack private acts must allege racial animus," Opp. ¶ 31, but then fail to identify any such allegation in their Complaint. Instead, Plaintiffs appear to believe erroneously that they can supplement their inadequate pleadings through their Opposition, despite foregoing the two opportunities to amend the Complaint made available to them under sections 3.B.i–ii of the Court's Individual Practices.

## D. Plaintiffs Offer No Further Support for Their Deficient State and Local Causes of Action, Which Accordingly Should Be Dismissed

### 1. Plaintiffs' Claims Under NYSCRL §§ 40 and 40-c Should Be Dismissed for Failure to Provide Timely Notice of Their Claims to the New York State Attorney General

As Baidu explained in its Moving Brief, Plaintiffs' fourth and fifth causes of action, under NYSCRL §§ 40 and 40-c, should be dismissed for failure to comply with the requirement that Plaintiffs notify the NYAG upon commencing an action under those statutes. Plaintiffs commenced their action over two years ago (in May 2011) and cannot now cure their failure to give timely notice to the NYAG. Mov. Br. at 14; *see also Am. Atheists, Inc. v. Port Auth. of N.Y. and N.J.*, 11 Civ. 6026 (DAB), 2013 U.S. Dist. LEXIS 45496, at *41 (S.D.N.Y. Mar. 28, 2013) ("Before filing a Section 40 or Section 40-c action, Plaintiffs needed to serve notice of the action before the [NYAG]."). Plaintiffs now seek to amend "so that they will have the opportunity to

comply with Section 40-d's notice requirements." Opp. ¶ 40.  But, as noted above, Plaintiffs have foregone both opportunities to amend afforded by the Court's Individual Practices, and do not assert that they have yet attempted to cure the notification failure (which would, in any case, be futile).  The Court should therefore reject Plaintiffs' request to amend the Complaint, and dismiss the fourth and fifth causes of action for failure to notify the NYAG.

### 2. Plaintiffs Still Offer No Legal Authority or Facts to Support the Assertion that a Search Engine is a "Place of Public Accommodation"

As Baidu's Moving Brief demonstrated, Plaintiffs failed to plead, beyond conclusory allegations, that a search engine can constitute a "place of public accommodation."  Mov. Br. at 12.  In response, Plaintiffs cite authorities for the proposition that a "place of public accommodation" need not be a fixed place, but still no authority that it need not be a *place* at all.  *See*, *e.g.*, *Cahill v. Rosa*, 89 N.Y.2d 14 (1996) (dental office); *D'Amico v. Commodities Exch., Inc.*, 235 A.D.2d 313, 314 (1st Dep't 1997) (commodities trading floor); *New York Roadrunners Club v. State Div. of Human Rights*, 81 A.D.2d 519, 519 (1st Dep't 1981) (course of the New York City marathon); *Batavia Lodge No. 196, Loyal Order of Moose v. N.Y. State Div. of Human Rights*, 43 A.D. 2d 807 (4th Dep't 1973) (premises of club); *In re U.S. Power Squadrons v. State Human Rights Appeal Bd.*, 59 N.Y.2d 401, 411 (1983) ("The [Appellate] Division found that . . . the place where petitioners' meetings and activities occur was a 'place' of public accommodation. We agree.").  Opp. ¶ 37.  Courts interpreting other anti-discrimination statutes have found that websites are not physical locations, and therefore not places of public accommodation.  *See*, *e.g.*, *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (finding, under the ADA, that "Facebook operates only in cyberspace, and is thus not a 'place of public accommodation' as construed by the Ninth Circuit."); *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532, 544–45 (E.D. Va. 2003) ("although a chat room or other online forum might be referred to

metaphorically as a 'location' or 'place,' it lacks the physical presence necessary to constitute a place of public accommodation under Title II."). Plaintiffs offer no factual or legal basis for this Court to depart from the reasoning of those cases and expand the application of "public accommodation" under the New York statutes alleged here to include search engines as "places of public accommodation."

### 3. Plaintiffs Concede They Do Not Have Authority to Support Their Claim That the "Democracy Movement in China" is a Creed

As Baidu demonstrated in its Moving Brief, the word "creed," as used in the NYSCRL and NYSHRL, does not extend to general political beliefs. In particular, Baidu cited authority in which New York federal and state courts interpreting New York State law rejected claims that the NYSCRL and NYSHRL—which prohibit creed-based discrimination—protect against discrimination on the basis of, for instance, association with a political party. Mov. Br. at 12–14 (citing *Hennessy v. City of Long Beach*, 258 F. Supp. 2d 200 (E.D.N.Y. 2003), *Eisert v. Town of Hempstead*, 918 F. Supp. 601, 615 (1996), and *Weinstock v. Ladisky*, 197 Misc. 859, 864 (Sup. Ct. N.Y. Cnty. 1950)). If the statutes do not extend to discrimination against political parties, it follows that they do not extend to membership in a group whose only common thread is a belief that "democracy"—which, as noted above, has numerous meanings and features—has merit.

In the face of this authority construing "creed" in the context of the anti-discrimination statutes underlying Plaintiffs' causes of action, Plaintiffs cite cases to argue that, in a variety of other contexts, there are "no controlling decisions on the interpretation of the word 'creed.'" Plaintiffs conclude, therefore, that Baidu's 12(c) Motion "should be denied at the pleadings stage." Opp. ¶ 47. In other words, Plaintiffs ask this Court to deny Baidu's motion because

13

Plaintiffs cannot locate authority that supports their theory of the case. The Court should therefore follow Baidu's on-point authority and dismiss the claim as a matter of law.[4]

### E. Having Foregone at Least Two Opportunities to Timely Amend Their Complaint Under This Court's Individual Practices, Plaintiffs Are Now Barred From Amending; and Any Such Amendment Would be Futile

Pursuant to the Court's Individual Practices, Plaintiffs have already had two opportunities to amend their Complaint: (1) after receiving Baidu's Pre-Motion Letter and (2) within 21 days of service of Baidu's Answer dated August 5, 2013—*i.e.*, by August 26, 2013. Plaintiffs chose not to amend, however, and now "no further opportunities to amend to address the deficiencies identified by the [Rule 12(c) motion] will be granted." Individual Practices §§ 3.B.i–ii.

Even if Plaintiffs could still amend their Complaint, they have provided no amended pleading or even described the new facts they would allege and how they would cure the legal infirmities in their claims. Instead, Plaintiffs maintain they need discovery to determine whether their conclusory allegations are justified. *See*, *e.g.*, Opp. ¶ 28 ("Discovery is needed to flush-out defendants' motives and discriminatory intent.") This is a patently improper request for a license to conduct a fishing expedition to find a claim they are unable to plead. *See Iqbal*, *supra*, 556 U.S. at 678–79; *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 577 (E.D.N.Y. 2012) ("To allow such a naked claim to go forward would merely green light for plaintiffs an expedition designed to fish . . . rather than a reasonably founded hope that the discovery process will reveal relevant evidence.'")(quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

---

[4] As in its Moving Brief, Baidu maintains that Plaintiffs' eighth cause of action should be dismissed because Plaintiffs allege no violations of their civil rights, and because the "right" to require Baidu to present Plaintiffs' viewpoint is not "elsewhere declared" in the first place. Ironically, Plaintiffs assert that they have stated a claim because the New York State Constitution "protects the freedom of speech"—precisely the protection of the Federal and State Constitutions that Plaintiffs ask this Court to violate by compelling Baidu.com to display or provide access to Plaintiffs' works.

Furthermore, since all of Plaintiffs' causes of action are barred by the First Amendment and fundamental legal deficiencies in the claims asserted, any amendment would be futile. *TechnoMarine S.A. v. Giftports, Inc.*, No. 11 Civ. 9643(DAB), 2012 WL 3964734, at *9 (S.D.N.Y. Sept. 10, 2012) (denying leave to amend "where amendment would be futile"); *Smith v. O'Connor*, 901 F. Supp. 644, 650 (S.D.N.Y. 1995) ("if a proposed amendment would . . . be subject to dismissal for insufficiency pursuant to [FRCP]12(b)(6), the proper course is to deny the motion to amend."). Here, Plaintiffs do not even offer a proposed amendment, much less one that can overcome the claims' numerous insurmountable infirmities.[5]

## CONCLUSION

Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

Dated: New York, New York
September 16, 2013

                                                QUINN EMANUEL URQUHART
                                                  &amp; SULLIVAN, LLP

                                                  By: /s/ Carey R. Ramos
                                                      Carey R. Ramos
                                                      (careyramos@quinnemanuel.com)
                                                     Jacob J. Waldman
                                                     (jacobwaldman@quinnemanuel.com)
                                                     51 Madison Ave, 22nd Floor
                                                     New York, New York 10010
                                                     Tel.: (212) 849-7000
                                                     Fax:  (212) 849-7100

                                               *Attorneys for Defendant Baidu, Inc.*

---

[5] Plaintiffs' untimely request to amend fits a pattern of repeatedly missing deadlines in this case.  *See* Dkt # 21 (requesting retroactive extension to file opposition and reply); Dkt # 21–22 (filing opposition and reply on November 2, 2012, two days after expiration of extension); Dkt. # 23 (filing opposition and reply again on November 5, 2013 attaching missing exhibit); Dkt. # 37, 40 (seeking retroactive extension to file motion for alternative service); Dkt. # 48–49 (filing Opposition to this motion one day after expiration of extension of time).  Notably, Plaintiffs' Opposition is signed and dated as of September 5, 2013, implying that Plaintiffs completed their Opposition on that date and then simply withheld it until after the deadline.